NOT DESIGNATED FOR PUBLICATION

No. 126,867

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

AXEL R. BORDELON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; SALLY D. POKORNY, judge. Oral argument held March 11, 2025. Opinion filed September 5, 2025. Affirmed.

*Randall Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Jon Simpson*, senior assistant district attorney, *Brian Deiter*, assistant district attorney, *Suzanne Valdez*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ATCHESON, P.J., COBLE and PICKERING, JJ.

PER CURIAM: For a time, Defendant Axel R. Bordelon (they/them) had a personal and business relationship with V.L. Years after the relationship ended badly, V.L. alleged Bordelon had sexually assaulted her multiple times while they were together. A jury in Douglas County District Court convicted Bordelon of two counts of aggravated sexual battery of V.L., found them not guilty on two other charges, and could not reach verdicts on three charges. Bordelon has raised several points on appeal. Apart from the district court's failure to instruct the jury on the lesser included offense of misdemeanor sexual battery for the crimes of conviction, we find no error. Given the evidence and the

1

stringent clear-error standard we must apply to the instructional issue, the district court's omission was harmless. We, therefore, affirm Bordelon's convictions and the resulting sentences.

FACTUAL AND PROCEDURAL HISTORY

Bordelon and V.L. met during college in 2012 as a result of their shared interest in both anime and graphic comics. The two formed a group focused on creating those comics. Other individuals moved in and out of the group over time. Bordelon and L.V. became close friends over the next few years, spending time together outside of their business project. At trial, V.L. testified that their platonic relationship took a significant turn in July 2014 toward sexually intimate contact. That phase of the relationship lasted through the end of the year, when the two broke off their close personal interactions.

The graphic comics group incorporated in early 2015. Later that year, V.L. left the group and received $300 for her intellectual property rights and financial investment, although she had actually contributed several thousand dollars. During the trial, V.L. testified that she was angry about the circumstances of her departure from the group and gave away the $300.

In 2020, V.L. contacted the Lawrence police department to report various instances of sexual contact she had with Bordelon during the second half of 2014. She provided investigators with a narrative account of a number of incidents. During the investigation, a detective interviewed Bordelon, and the jury watched a video recording of the interview during the trial.

The State charged Bordelon in August 2021 with three felony sex offenses and filed an amended complaint about four months later expanding the charges to three counts of aggravated criminal sodomy, two counts of aggravated sexual battery, one

count of rape, and one count of attempted rape—all serious person felonies. The jury heard evidence in the case in February 2023.

At trial, V.L. characterized herself as "asexual" and told the jury she had described herself that way to Bordelon. She testified that she and Bordelon were "friends" and were not in a dating relationship. In the video interview the State played at trial, Bordelon said they and V.L. were struggling with mental health challenges, including self-harm, in 2014. According to Bordelon, the two had unspoken expectations around sexual activity; so while V.L. never explicitly requested physical intimacies, she accepted them. Bordelon said their relationship with V.L. became physically intimate between May and December 2014—a period they described as "toxic" and reciprocally abusive emotionally.

Given the outcome of the trial and the issues on appeal, we turn to the specific incidents resulting in the guilty verdicts. In the police interview, Bordelon did not discuss or describe any specific sexual encounters with V.L. And they did not testify at trial. So the jury heard V.L.'s unrebutted account of the conduct.

In the first incident, V.L. was at Bordelon's apartment in July 2014, when they grabbed her and pulled her into their bedroom. Bordelon pinned V.L.'s arms above her head, pushed up her shirt, and groped and kissed her breasts. They tried to take off V.L.'s pants, and she physically resisted their doing so. The sexual assault ended when V.L. punched Bordelon in the face. V.L. remained at the apartment and recalled Bordelon getting her ice packs for bruises on her wrists.

The second incident happened in late 2014 at V.L.'s apartment. From the record, we gather Bordelon did not then have a permanent residence and stayed various places, including with V.L. at least some of the time. V.L. went to bed, partially disrobed, and got under the covers. Bordelon came into the bedroom sometime later. They turned back

the covers, removed V.L.'s remaining clothing, masturbated, and ejaculated on V.L. Bordelon then cleaned V.L. up, put her clothing back on, and restored the covers. Throughout the incident, V.L. said and did nothing. By her account at trial, she was entirely passive. V.L. explained to the jury she reacted that way as a defense mechanism to a physically threatening circumstance. She termed it "trauma brain" and described the reaction as "freeze or fawn" in contrast to "fight or flight." V.L. told the jury she felt "resignation, defeat, [and] failure" during and after Bordelon's conduct.

The jurors convicted Bordelon of two counts of aggravated sexual battery for the incidents we have outlined. They found Bordelon not guilty of attempted rape and one count of aggravated criminal sodomy, and they could not reach verdicts on a count of rape and two counts of aggravated criminal sodomy. At a hearing about six weeks later, the district court sentenced Bordelon to a prison term of 32 months on each conviction, ordered that the terms be served consecutively followed by postrelease supervision for 24 months, and placed them on probation for 36 months. That reflects a guidelines sentence, given Bordelon's lack of criminal history. Bordelon must register and report under the Kansas Offender Registration Act, K.S.A. 22-4901 et seq., for 25 years. Bordelon has appealed.

LEGAL ANALYSIS

Bordelon raises four points on appeal: (1) the district court erred in instructing the jury on the intent required to convict them of aggravated sexual battery; (2) the State presented insufficient evidence to support the guilty verdict on the late 2014 incident; (3) the jury should have been instructed on misdemeanor sexual battery as a lesser included offense; and (4) the prosecutor made an improper closing argument to the jury. We address the issues in that order and supplement our initial factual recitation as necessary.

4

Bordelon contends the jury instruction on the elements of aggravated sexual battery impermissibly diluted the State's burden to prove the requisite criminal intent, requiring their convictions be reversed. They attack the legal sufficiency of the wording of the instruction. *State v. Mendez*, 319 Kan. 718, 727, 559 P.3d 792 (2024). The contention, however, relies on an overly formalistic interpretation of the instruction and belies the everyday meaning of the relevant phrasing. Obviously, as a general matter, an instruction informing the jury of the elements of a charged crime is legally and factually appropriate.

Bordelon did not object to the instruction in the district court on the ground they now raise. The failure to object does not preclude our review, but Bordelon must show that the instruction was clearly erroneous to secure any relief. To reverse, we must be firmly convinced that the jury would have returned different verdicts had the district court used a proper instruction. *Mendez*, 319 Kan. at 727-28. As we explain, however, the jury instruction was legally sufficient, so there was no error. But even if it had been insufficient, it would not have injected clear error into the trial.

In 2014, the aggravated sexual battery statute criminalized a defendant's nonconsensual "touching" of the victim "with the intent to arouse or satisfy the sexual desires" of the defendant or another person when the victim had been "overcome by force or fear." K.S.A. 2014 Supp. 21-5505(b)(1). In relevant part, the instructions on the elements of the aggravated sexual battery charges informed the jury the State had to prove Bordelon "touched [V.L.] with the intent to arouse or satisfy the sexual desires of the defendant or another" and "[t]he touching was committed without the consent of [V.L] under the circumstances when she was overcome by force or fear." By way of explanation, the instructions stated: "A defendant acts intentionally when it is the defendant's conscious objective or desire to do the act complained about by the State."

The explanatory sentence identifies and partially paraphrases a statutorily recognized culpable mental state that would support a criminal conviction. K.S.A. 21-5202(h) (person acts "'intentionally'" when they have a "conscious objective or desire to engage in the [criminal] conduct").[*]

[*]The instruction for the August 2014 charge stated in full:

"INSTRUCTION NO. 6

"The defendant is charged in Count 1 with aggravated sexual battery. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1.    The defendant touched VSL (DOB: [redacted]) with the intent to arouse or satisfy the sexual desires of the defendant or another.

"2.    At the time of the touching, VSL (DOB: [redacted]) was 16 or more years old.

"3.    The touching was committed without the consent of VSL (DOB: [redacted]) under the circumstances when she was overcome by force or fear.

"4.    This act occurred between the 1st day of July 2014 and the 31st day of July 2014 in Douglas County, Kansas.

"The State must prove the defendant committed the crime of aggravated sexual battery intentionally.

"A defendant acts intentionally when it is the defendant's conscious objective or desire to do the act complained about by the State."

The instruction for the second charge differed only in the relevant date of the offense.

Bordelon's argument rests on the notion that the phrase "the act" in the explanatory sentence necessarily prompted the jury to conclude it could (and should) convict if it found Bordelon touched V.L. divorced from the requisite intent. In other words, according to Bordelon, finding touching alone would have been enough for the jury to return guilty verdicts under the instructions. In short, they contend the stated element and

6

the explanatory sentence were dissonant and the dissonance would have hopelessly confused the jury. But the argument artificially cleaves "touching" from "the intent to arouse or satisfy" in that element of the crime as outlined in the instructions, and does so for no readily apparent reason.

We assess jury instructions by attributing common or everyday meanings to the words, unless they include specialized definitions—the same way the jurors would read them. See *State v. McLinn*, 307 Kan. 307, 343, 409 P.3d 1 (2018) (jurors expected to "apply a common understanding of the words" used in jury instructions); *State v. Armstrong*, 299 Kan. 405, 439-40, 324 P.3d 1052 (2014) So "the act" refers to the criminal act, i.e., the criminal conduct, alleged against Bordelon. On these charges, that would be the nonconsensual touching of V.L. for the particular purpose of sexual gratification. And, consistent with the instructions, that is the act or conduct the State has "complained about"—not simply that Bordelon touched V.L. Bordelon's argument rests on a linguistic magic trick that tries to make the plain meaning of the instructions say something that it does not.

The elements instructions were legally sufficient. Our conclusion corresponds to that of the Kansas Supreme Court in *State v. Seba*, 305 Kan. 185, 207, 380 P.3d 209 (2016), a closely analogous case. The *Seba* court found the same language Bordelon challenges here—referring to "the act complained about" in explaining the intentional culpable mental state—to be acceptable. 305 Kan. at 207. In *Seba*, the first-degree murder instruction identified the challenged element as "intentionally killed," thereby making clear what "act" had to be committed intentionally. 305 Kan. at 206. The instructions here similarly linked "touching" directly with "the intent to arouse or satisfy . . . sexual desires" as one of the required elements to convict. Linguistically, the element described conduct consisting of touching undertaken for a particular proscribed purpose.

The instructions here might have been improved if they had substituted "conduct" for "act" in the explanatory sentence, mirroring the statutory language used to define the culpable mental state in K.S.A. 21-5202(h), or if they had elaborated on the act as being touching for purposes of sexual gratification. But jury instructions are not erroneous merely because better ones could be crafted. See *State v. Ervin*, 320 Kan. 287, Syl. ¶ 4, 566 P.3d 481 (2025); *State v. Clark*, No. 117,951, 2019 WL 3210263, at *4 (Kan. App. 2019) (unpublished opinion).

Finally, even if we have mistakenly characterized the instructions as legally sufficient, we are not prepared to say they created clear error regarding the requisite criminal intent of sexual arousal or satisfaction. As we have outlined, we would have to be firmly convinced the jury would have returned different verdicts. We are not. The record evidence centers on V.L.'s account of the two incidents; Bordelon never offered differing narratives. And circumstantial evidence is sufficient to prove a crime. *State v. Thach*, 305 Kan. 72, 84, 378 P.3d 522 (2016). Without belaboring the evidence, V.L. testified that Bordelon fondled and kissed her breasts in the first incident and ejaculated on her during the second incident. Those circumstances strongly support an intent based on sexual gratification. So instructions that might have prompted the jury to look more closely at the evidence bearing on intent would not have helped Bordelon.

*Sufficiency of Evidence in Second Incident*

Bordelon contends the State presented insufficient evidence to support the conviction for aggravated sexual battery based on the incident that occurred in late 2014 when V.L. lay in bed apparently asleep while they ejaculated on her. The argument zeros in on the evidence that would show V.L. had been overcome by force or fear. In reviewing a sufficiency challenge, we construe the evidence in a light most favorable to the party prevailing in the district court, here the State, and in support of the jury's verdict. We neither reweigh the evidence generally nor make credibility determinations

8

specifically. *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021); *State v. Jenkins*, 308 Kan. 545, Syl. ¶ 1, 422 P.3d 72 (2018). The issue for review is simply whether rational jurors could have found the defendant guilty beyond a reasonable doubt. *State v. Butler*, 307 Kan. 831, 844-45, 416 P.3d 116 (2018).

Again, we have V.L.'s unrebutted account of the crime, as did the jury. The jury, of course, also had the opportunity to see V.L. as she testified on direct and cross-examination. See *State v. Franco*, 49 Kan. App. 2d 924, 936, 319 P.3d 551 (2014) (appearance on stand with taking of oath and rigor of cross-examination "perhaps the most discerning crucible" for distinguishing honest witnesses from mendacious ones). Unlike the earlier incident, Bordelon did not apply physical force to V.L. The issue, therefore, narrows to whether the evidence reasonably showed that V.L. had been overcome by fear.

We are guided by two Kansas Supreme Court cases analyzing when victims may be overcome by force or fear as an element of a sex crime. *State v. Brooks*, 298 Kan. 672, 688, 317 P.3d 54 (2014); *State v. Borthwick*, 255 Kan. 899, 913-14, 880 P.2d 1261 (1994). Both of those cases involved convictions for rape. One alternative statutory element for rape requires the victim to have been overcome by force or fear. See K.S.A. 21-5503(a)(1)(A). The court's discussion of what constitutes fear or being overcome by fear is equally applicable here since aggravated sexual battery includes the same element. See K.S.A. 21-5505(b)(1).

The *Borthwick* court fashioned the analytic template by recognizing a victim's fear is both heavily dependent upon case-specific circumstances and "inherently subjective." 255 Kan. at 911, 913-14. So long as a victim's testimony "is not 'so incredible as to defy belief'" as to their fear, the matter should be submitted to the jury. 255 Kan. at 913-14 (quoting *State v. Cooper*, 252 Kan. 340, 347, 845 P.2d 631 [1993]). In turn, the overall

reasonableness of the victim's fear becomes a component of the jury's ultimate credibility determination consistent with its role as the finder of fact. 255 Kan. at 913.

Two decades after *Borthwick*, the court built on that template in *Brooks*. 298 Kan. at 685-87 (embracing *Borthwick* rationale). In that case, Brooks threatened to disclose his ex-wife's affair with a married coworker if she did not have sex with him. She complied with his demand and went to the police when he repeated the threat. In upholding Brooks' conviction for rape, the court found that the victim's fear of extreme embarrassment if her relationship were revealed sufficiently supported the "force or fear" element. 298 Kan. at 690. The court adopted an expansive reading of the term "fear" in the absence of some qualifying or limiting statutory language and, consistent with *Borthwick*, recognized the jury's paramount role in assessing what constitutes fear in that context. 298 Kan. at 687-88.

Here, in her trial testimony, V.L. did not expressly describe herself as having been fearful during the late 2014 incident. But use of the term "fear" or "fearful" is not a necessary condition for a submissible case. V.L. did describe her passivity as a defense mechanism that substituted for a fight or flight response to Bordelon's assault. Her testimony could be taken as an explanation that she sought to avoid or was fearful of a physical confrontation with Bordelon. Consistent with *Borthwick* and *Brooks*, that sort of subjective reaction was for the jury to test. We will not retest the evidence or reject the jury's conclusion.

*Lesser Included Offense Instruction*

Bordelon argues the district court erred in failing to instruct the jury on misdemeanor sexual battery as a lesser included offense of aggravated sexual battery. The misdemeanor proscribes unconsented touching of another person to arouse or satisfy the sexual desires of the defendant or a third person. K.S.A. 2014 Supp. 21-5505(a). For example, an individual would be guilty of the misdemeanor for spontaneously grabbing

10

or fondling another person's private parts with the requisite intent. See, e.g., *State v. Bell*, No. 110,550, 2014 WL 5801050, at *1 (Kan. App. 2014) (unpublished opinion). Overcoming the victim by force or fear elevates the misdemeanor to a felony.

The State concedes that sexual battery is a lesser included offense and that the district court should have submitted an appropriate instruction to the jury. The concession is well-taken. See *State v. Lowe*, 317 Kan. 713, 720, 538 P.3d 1094 (2023) (When the evidence supports the elements of a felony charge, the district court should instruct on a lesser included offense composed of some but not all of those elements.). But Bordelon neither requested the lesser included instructions nor objected to the district court's failure to give those instructions. The error is, therefore, unpreserved. We consequently examine the trial outcome for clear error and must be firmly convinced the jury would have reached different results had the instructions been given.

Considering the demanding test for reversible error, we have little difficulty disposing of this point as to the August 2014 incident. Bordelon forcibly pinned V.L.'s arms above her head as they sexually assaulted her. They applied sufficient force to leave immediately visible marks on her wrists. The evidence showed the application of demonstrable force to restrain V.L. We are unpersuaded the jury would have convicted Bordelon of misdemeanor sexual battery under the circumstances.

The late 2014 incident presents a closer question, turning on V.L. being overcome by fear rather than force. Without repeating what we have set out already, fear encompasses an especially wide range of reactions to threatened or actual improper sexual touching. In turn, determining both the credibility and the qualitative sufficiency of the victim's account entails a quintessential jury function. Had the jury entertained a reasonable doubt that V.L. was overcome by fear, it would have brought back a not guilty verdict—something it was obviously prepared to do on some of the other charges. We cannot say we are firmly convinced the jury would have convicted Bordelon of

11

misdemeanor sexual battery had it been afforded the opportunity. That is too high a bar for them to clear.

*Prosecutor's Closing Argument*

Bordelon contends the prosecutor made an improper closing argument to the jury and deprived them of a fair trial as a result. Appellate courts examine an alleged prosecutorial error in closing argument using a standard initially outlined in *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016). See *State v. Anderson*, 318 Kan. 425, 437, 543 P.3d 1120 (2024) (recognizing and applying *Sherman* test). The *Sherman* standard first considers whether an error has occurred at all and then weighs any prejudice to the defendant resulting from a demonstrable error. Prejudice should be measured against the standard in *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), for a constitutional wrong. The State, as the party benefiting from the error, must establish "'beyond a reasonable doubt'" that the improper argument "'did not affect the outcome of the trial'" taking account of the full trial record. *Sherman*, 305 Kan. at 109 (quoting *Ward*, 292 Kan. 541, Syl. ¶ 6).

Bordelon cites this portion of the prosecutor's closing argument:

"The claim that there was a consensual sexual relationship, [V.L.] was asked about that and she denied ever entering into a consensual sexual relationship with Axel Bordelon.

"You got a world in which one thinks that [V.L.] did enter into such a relationship. That doesn't mean every encounter would necessarily have to be consensual and she detailed the encounters where there was no consent. *You know that because she told you that.*" (Emphasis added.).

They focus on the last sentence as especially problematic. And they rely on *State v. Douglas*, 313 Kan. 704, 714-16, 490 P.3d 34 (2021), to support their claim of error. But *Douglas* does not do the legal work Bordelon asks of it.

In *Douglas*, the court focused on a prosecutor's repeated use of the phrase "we know" in closing argument. The phrase is dangerous because it may be improper depending on how it is used. If a prosecutor refers to undisputed facts, as in "we know" the defendant lived down the block from the victim, then the phrase is unobjectionable. If, however, the prosecutor introduces one version of disputed evidence with the phrase, it typically amounts to an impermissible expression of personal opinion. 313 Kan. at 715-16. That discussion in *Douglas* is largely beside the point here.

Bordelon overreads *Douglas* in an effort to make it seem pertinent. In passing, the *Douglas* court mentioned two instances in the prosecutor's closing argument where he introduced uncontroverted facts with the phrase "you know" and found those comments to be unobjectionable. 313 Kan. at 714-15. Bordelon argues that *Douglas* recognized the phrases "we know" and "you know" to be equivalent and similarly likely to inject error into a closing argument. But the court offered no such conclusion.

Here, the prosecutor did no more than guide the jury to the principal evidence—L.V.'s own testimony—establishing the encounters between Bordelon and L.V. were nonconsensual. He argued the jurors knew L.V. did not consent because she said as much under oath from the witness stand. That's fair comment on the evidence. In closing argument, prosecutors may properly identify the trial evidence supporting an element of a charged crime and suggest the jurors know the element has been proved based on that evidence. Here, there really wasn't any material evidence apart from L.V.'s testimony. Defense lawyers, of course, may do the same in arguing for reasonable doubt—you know there is reasonable doubt because of this piece of evidence and that piece of evidence. An argument framed that way does not inject an impermissible opinion from the lawyer on

13

witness credibility; it identifies a desired factual conclusion and directs the jurors to evidence that ought to cause them to accept that conclusion as the correct one. Because we find the closing argument to be proper, we do not undertake the second step in the *Sherman* test to assess possible prejudice to Bordelon.

Having examined each of Bordelon's arguments, we find no reversible error.

Affirmed.