NOT DESIGNATED FOR PUBLICATION

No. 125,079

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GEORGE E. PHILLIPS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; DAVID J. KING, judge. Oral argument held September 20, 2023. Opinion filed August 16, 2024. Affirmed.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before ATCHESON, P.J., ISHERWOOD and HURST, JJ.

PER CURIAM:  A jury sitting in Leavenworth County District Court convicted George E. Phillips, a prisoner in the Lansing state prison, of two counts of trafficking in contraband in a correctional institution for having unauthorized flip phones in his cell. Phillips now challenges the convictions on an array of grounds. Although Phillips' trial was not without some significant snags, we find no reversible error and, therefore, affirm the verdicts and resulting sentences. See *State v. Walker*, 308 Kan. 409, 426, 421 P.3d 700 (2018) (criminal defendant "not entitled to a perfect trial" but must "receive[] a fair one"); *State v. Alexander*, No. 125,771, 2024 WL 2554102, at *1 (Kan. App. 2024)

1

(unpublished opinion) ("long-standing rule" criminal defendants entitled to fair trials not perfect ones).

The underlying facts are straightforward. In January 2016, corrections officers at Lansing searched Phillips' one-person cell and found a flip phone and a corresponding phone charger. They confiscated those items. Phones are considered contraband, meaning prisoners cannot have them in their cells. Seven months later, officers again searched Phillips' cell and found another flip phone. They confiscated that phone and seized a piece of paper with a telephone number written on it as evidence.

In January 2018, the State charged Phillips with two counts of what's called trafficking in contraband in a correctional institution, a severity level 6 nonperson felony violation of K.S.A. 21-5914(a)(3), for possessing the flip phones in violation of the prison rules. The district court conducted the one-day jury trial in late November 2021. Phillips did not testify or call other witnesses in his defense during the trial. The jury found Phillips guilty on both counts. At a later hearing, the district court sentenced Phillips to serve 43 months in prison followed by 24 months on postrelease supervision for one count, reflecting a standard guidelines punishment for the primary offense of conviction, and a concurrent prison sentence of 18 months on the other count, also reflecting a standard guidelines sentence. Phillips has timely appealed.

LEGAL ANALYSIS

On appeal, Phillips has launched a series of attacks on his trial and the guilty verdicts. He does not independently challenge the sentences. We take up the points Phillips has raised, augmenting our recitation of the factual and procedural history of this prosecution as necessary.

*Sufficiency of the Evidence*

Phillips has challenged the sufficiency of the evidence insofar as the State failed to present evidence that the confiscated flip phones were functional. That is, they could make and receive calls if service were available. The State neither presented direct evidence the flip phones worked nor introduced the phones as exhibits at trial. The district court admitted photographs of the phones for the jurors to consider.

In reviewing a sufficiency challenge, we construe the evidence in a light most favorable to the party prevailing in the district court, here the State, and in support of the jury's verdict. An appellate court will neither reweigh the evidence generally nor make credibility determinations specifically. *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021); *State v. Jenkins*, 308 Kan. 545, Syl. ¶ 1, 422 P.3d 72 (2018); *State v. Butler*, 307 Kan. 831, 844-45, 416 P.3d 116 (2018); *State v. Pham*, 281 Kan. 1227, 1252, 136 P.3d 919 (2006). The issue for review is simply whether rational jurors could have found the defendant guilty beyond a reasonable doubt. *Butler*, 307 Kan. at 844-45; *State v. McBroom*, 299 Kan. 731, 754, 325 P.3d 1174 (2014). Elements of even the gravest crimes may be proved by circumstantial evidence alone. *State v. Douglas*, 313 Kan. 704, 716, 490 P.3d 34 (2021); *State v. Thach*, 305 Kan. 72, 84, 378 P.3d 522 (2016).

Phillips' argument rests on the premise that the prison rules and regulations—and how those restrictions were communicated to inmates—define contraband in a way that includes working cell phones but not dysfunctional ones. The State never introduced a copy of the rules and regulations or offered testimony on the precise way they described cell phones as contraband. So the jury did not have that information; nor do we. If the rules and regulations contained a blanket ban on, say, telephones of any type, style, or mode of operation, then Phillips' point would fail because the rules and regulations forbade possession of dysfunctional flip phones. As the party claiming error in the district court, Phillips has an obligation to furnish an appellate record establishing the claim.

3

*State v. Bryant*, 285 Kan. 970, 980, 179 P.3d 1122 (2008); *Moore v. Moore*, 56 Kan. App. 2d 301, 320, 429 P.3d 607 (2018) ("Thus '[w]hen there are blanks in that record, appellate courts do not fill them in by making assumptions favoring the party claiming error in the district court.'") (quoting *Harman v. State*, No. 108,478, 2013 WL 3792407, at *1 [Kan. App. 2013] [unpublished opinion]). His claim ultimately falters on that gap in the record.

If the rules and regulations definitionally banned "devices capable of sending or receiving voice calls, images, or data through a wireless network," then Phillips might have a point that a dysfunctional flip phone would not qualify as contraband. During the trial, one of the corrections officers who coordinated searches for contraband testified that cell phones were prohibited because they permitted inmates to engage in unmonitored and unauthorized communications with persons outside the facility. He did not suggest that an inert flip phone could be used as a weapon or would be a commodity for barter among inmates. So maybe Phillips is right about the scope of contraband.

But even if we were to give Phillips that benefit—although he probably has not earned it—his sufficiency argument still falters. There was circumstantial evidence each of the flip phones worked. In the first search, the officers also recovered a phone charger. If the flip phone didn't work, Phillips would have no reason to keep a charger for it. In the second search, the officers recovered a piece of paper with a telephone number on it. A reasonable person could infer Phillips had been given the flip phone by another inmate with instructions to call that number and to deliver or receive a message of some sort. (That would account for the absence of a phone charger in the second search. Or chargers might be a commodity transferred among inmates.) Those circumstances might not be rock solid support for the State's case. But on appeal, the circumstantial evidence supporting the verdicts doesn't have to be. We find there was sufficient evidence to support both guilty verdicts.

*Defense Stipulation to Phillips' Inmate Status*

An element of trafficking contraband in a correctional institution requires the defendant to have some connection to a jail or prison as an employee, visitor, or inmate while possessing or otherwise handling unauthorized items in the facility or while attempting to get the items into the facility. To state the obvious, the statute applied to Phillips as a prisoner. See K.S.A. 21-5914. Apparently unwilling to rely on the testimony of the corrections officers alone on this point, the State attempted to introduce an official record establishing Phillips' status. Phillips' lawyer objected on the grounds the record was unduly prejudicial and offered to stipulate that Phillips was, indeed, a prisoner housed in the Lansing penitentiary. The State agreed to the offer. Based on the stipulation, the district court fashioned elements instructions on the two charges that omitted any reference to Phillips' connection to the corrections facility, so the jurors were not asked to determine that fact. See PIK Crim. 4th 59.110 (2023 Supp.) (identifying one element of trafficking in contraband as defendant having "unauthorized possession" of described item "while in a correctional institution").

The document the State intended to introduce is not part of the record on appeal, but we infer from the trial transcript that it included some or all of Phillips' criminal history, including the conviction on which he was then confined. Those crimes were irrelevant to proving the trafficking in contraband charges and could only have served to impermissibly sway the jurors against Phillips.

On appeal, Phillips contends the process of formulating and then relying on the stipulation violated his constitutional right to a jury trial because the district court never personally informed him of his right to have the jurors consider and decide every fact essential to prove the charge against him and, in turn, never secured a waiver of that right from him. We agree the district court failed to protect Phillips' right to a jury trial under the Sixth Amendment to the United States Constitution. But that kind of error may be

harmless depending on the circumstances. See *State v. Guebara*, 318 Kan. 458, 470, 544 P.3d 794 (2024). Because the State benefited from the district court's constitutional mistake, it has to persuade us that the outcome—the guilty verdicts—would have been the same absent the error. 318 Kan. at 470 (constitutional error standard applies).

In *Guebara*, the court formulated a review standard that asks whether the defendant would have offered the stipulation even if he had been informed of his right to have the jury consider and decide the stipulated fact. 318 Kan. at 470. The standard arguably seems inapposite here because Phillips' lawyer offered the stipulation without waiting for a ruling on his objection to the State's proffer of the prison record. Had the district court sustained the objection, the stipulation would have been unnecessary. But even if we were to apply the usual harmlessness standard for a constitutional error benefiting the State—a test more favorable for Phillips—we see no basis for questioning the verdicts. An appellate court would find the error harmless if the State could show beyond a reasonable doubt the result would have been the same. *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011) (constitutional error "harmless where the party benefitting from the error proves beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record").

We needn't belabor this discussion. As we have suggested, the testimony of the corrections officers searching the cell would have established (and, indeed, did establish) that Phillips was an inmate. If the State remained apprehensive about the point, it undoubtedly could have called a prison administrator to testify that Phillips was a member of the inmate population. And, of course, Phillips could not have credibly disputed his status as an inmate. So, although Phillips has identified a constitutional error, he cannot shape it into a substantive advantage in setting aside his convictions.

*Error in Complaint and in Jury Instructions on Culpable Mental State*

In a roundabout argument made for the first time on appeal, Phillips challenges the convictions because both the complaint and the jury instructions improperly included "recklessly" as a statutory culpable mental state in addition to "knowingly" and "intentionally." Phillips has imprecisely framed this point but argues the jury may have convicted him of *recklessly* possessing contraband in a correctional institution—conduct that is not against the law in Kansas. Although reckless possession of contraband is not a crime, Phillips has failed to show reversible error. The mistake in the complaint did not materially prejudice him. And his lawyer requested the faulty jury instruction, creating an invited error that we need not review. Moreover, the jury instruction would not have amounted to reversible error anyway, especially in the absence of a trial objection to it.

We first outline the error and then explain why it furnishes no grounds for relief. As we have indicated, the State charged Phillips with violating K.S.A. 21-5914(a)(3), criminalizing "any unauthorized possession of any item while in any correctional institution." The statute does not expressly identify any of the culpable mental states identified in K.S.A. 21-5202—recklessly, knowingly, or intentionally—as an element of the crime. But "possession" is a defined term in the Kansas Criminal Code that does include culpable mental states. When Phillips committed these crimes in 2016, "possession" meant "having joint or exclusive control over an item with knowledge of or intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." K.S.A. 2016 Supp. 21-5111(v). The definition refers to both knowing and intentional control of an identified object. But the definition conspicuously omits any mention of recklessness as a required mental state.

The Kansas Supreme Court has held that the definition of "possession" and its reference to culpable mental states must be read into the statutory elements of any crime based on the possession of proscribed items. See *State v. Rizal*, 310 Kan. 199, 206-07,

7

445 P.3d 734 (2019) (finding "imbedded" mental state in statutory definition of possession becomes part of required proof to convict for possession of controlled substances); see also *State v. Albright*, No. 125,866, 2024 WL 1827294, at *2 (Kan. App. 2024) (unpublished opinion) (applying *Rizal* to determine culpable mental state for unlawful possession of a weapon under K.S.A. 21-6304). In short, Phillips is correct in saying there is no crime of reckless possession of contraband in a correctional institution. And it is probably fair to add that the statutory definition of "possession" creates something of a trap for the unwary when it comes to identifying the elements of a crime based on possession of a prohibited thing, be it illegal drugs, firearms for some convicted felons, or contraband in a prison or jail. That's because K.S.A. 21-5202(e) states that if a crime requires a culpable mental state but does not identify one, any of the three will be sufficient to support a conviction. Further camouflaging the trap, the statutory outline of culpable mental states in K.S.A. 21-5202 does not cross-reference the definition of possession in K.S.A. 21-5111. Everyone in this case appears to have fallen into the trap.

We mention, as did the panel in *Albright*, that in 2022 the Legislature amended the definition of "possession" to read: "knowingly having joint or exclusive control over an item or knowingly keeping some item in a place where the person has some measure of access and right of control." K.S.A. 2022 Supp. 21-5111(v); 2024 WL 1827294, at *2. The change removed "intent" to have control and focused the statutory language solely on "knowingly" controlling an item consistent with the earlier requirement of having control "with knowledge." See L. 2022, ch. 76, § 1. The newer version does not apply to Phillips. See *State v. Armstrong*, 238 Kan. 559, 566, 712 P.2d 1258 (1986). But neither version identifies "recklessly" as a proper culpable mental state.

Phillips points out that the complaint in the first count charged—in the creaky verbiage common to those instruments—that he "did unlawfully, feloniously and intentionally, knowingly or recklessly possess, without authority to do so, contraband, to wit: Black, flip style, cell phone . . . ." The complaint repeats that wording and describes

8

a different cell phone in the second count. He contends the inclusion of "recklessly" creates an error that reaches out to taint the jury's guilty verdicts. He is mistaken.

First, district courts derive their subject-matter jurisdiction over criminal cases from the Kansas Constitution and the related statutes and not from a complaint or an indictment. Sloppy drafting of a complaint does not deprive a district court of subject-matter jurisdiction. *State v. Dunn*, 304 Kan. 773, 774-75, 375 P.3d 332 (2016). So the district court had the authority to try Phillips notwithstanding the improper inclusion of recklessly in the complaint's description of the charges.

In addition, complaints must give criminal defendants fair notice of the charges against them. A complaint that fails to do so violates the due process rights guaranteed an accused in the Fifth and Fourteenth Amendments to the United States Constitution and section 10 of the Kansas Constitution Bill of Rights. *Russell v. United States*, 369 U.S. 749, 763-65, 82 S. Ct. 1038, 8 L. Ed. 2d 240 (1962) (federal constitutional right); *Dunn*, 304 Kan. at 814 (state and federal constitutional rights). Here, the complaint correctly identified the appropriate criminal statute and largely parroted its language. The complaint alleged the approximate dates of the offenses, described with particularity the contraband, and included the proper culpable mental states. In sum, the complaint included information stating a crime. The defect was *adding* an inappropriate mental state. We fail to see a due process violation based on insufficient notice of the charges. The additional language, though incorrect, amounted to surplusage and could have been excised without diminishing the sufficiency of the complaint. See *State v. Kendall*, 300 Kan. 515, 531, 331 P.3d 763 (2014) (extraneous or erroneous information may be stricken from complaint as surplusage); see also *United States v. Thompson*, 990 F.3d 680, 684 (9th Cir. 2021) (where indictment states elements of offense, defendants not impermissibly misled by additional language identifying other means of committing offense). We would confront a much different and more difficult question had the

complaint alleged *only* reckless possession of contraband and thus charged no crime at all. See *Dunn*, 304 Kan. at 816-17.

Phillips uses his challenge to the complaint as a springboard to jump directly to an attack on the jury instructions that outline the elements of trafficking in contraband. Those instructions included "recklessly" along with "knowingly" and "intentionally" as a sufficient mental state to convict. In turn, Phillips argues the guilty verdicts are improper because the jurors might have relied on recklessness in reaching their conclusion. But the argument attempts to leap over—and ignores—a huge procedural obstacle. Phillips' lawyer requested a jury instruction that included recklessly as an appropriate culpable mental state and did not object when the district court agreed to instruct the jury that way. So the point Phillips now raises is the product of his own invited error. See *State v. Fleming*, 308 Kan. 689, 706-07, 423 P.3d 506 (2018).

The judicial process has a strong aversion to allowing parties to benefit when they invite a district court to act in a way that creates error and then in the face of an adverse judgment complain on appeal because the district court accepted their invitation. *Fleming*, 308 Kan. at 696; *State v. Hargrove*, 48 Kan. App. 2d 522, 531, 293 P.3d 787 (2013). In short, a party cannot prevail on appeal based on a mistaken district court decision or ruling the party invited. *State v. Smith*, 232 Kan. 128, Syl. ¶ 2, 652 P.2d 703 (1982) ("Where a party procures a court to proceed in a particular way and invites a particular ruling, he is precluded from assailing such proceeding and ruling on appellate review."). The invited error doctrine covers requested rulings that implicate the party's constitutional rights. *Fleming*, 308 Kan. at 705.

The rule has been strictly applied. *Fleming*, 308 Kan. at 701. In *Fleming*, the court acknowledged an escape hatch if the requested action created structural error in a criminal proceeding—a distinctly abstract proposition. 308 Kan. at 704; see *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014) ("[T]he invited error doctrine is

10

inapplicable when a constitutional error is structural."). A structural error so undermines the adjudicatory process that it may cease to function in a fundamentally acceptable way, even though actual prejudice to the criminal defendant may be difficult to establish. See *Arizona v. Fulminante*, 499 U.S. 279, 309-10, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991) (Structural error "affect[s] the framework within which the trial proceeds, rather than simply an error in the trial process itself" and "def[ies] analysis by 'harmless-error' standards."); *Verser*, 299 Kan. at 784. The error here is not structural since it turns on the addition of improper language to jury instructions outlining the elements of the charged crimes. That creates an error in the trial process that can be gauged for harmlessness.

Phillips invited the error he now claims compromised the jury instructions and undermined the jury's guilty verdicts. We reject his contention based on the invited error rule. But our decision does not leave Phillips without a potential remedy. He may seek relief in a habeas corpus proceeding under K.S.A. 60-1507 after the conclusion of this direct appeal. *Fleming*, 308 Kan. at 707.

As a check on our conclusion, we consider how we would assess the faulty jury instructions if Phillips had not requested them and merely failed to object to the district court using them. We would review for clear error, meaning Phillips would have to firmly convince us the trial outcome would have been different had the error not occurred. See *State v. Reynolds*, 319 Kan. ___, 2024 WL 3419731, at *12 (2024). That standard also applies when a defendant does not object to a jury instruction containing a constitutional error. *Reynolds*, 2024 WL 3419731, at *12; *State v. Jarmon*, 308 Kan. 241, 244, 419 P.3d 591 (2018). Here, the call winds up an easy one.

Neither Phillips nor the State requested an instruction containing the statutory definitions of the relevant culpable mental states. The district court, however, correctly recognized the need to instruct the jury on them anyway. See PIK Crim. 4th 52.010 (2021 Supp.), Notes on Use ("The trial judge should instruct on the appropriate mental state and

11

use the [PIK] definition as required by each charge."). The district court informed the jurors that a defendant acts "intentionally" when "it is the defendant's desire or conscious objective to do the act complained about by the State"—here, that would be possessing contraband in the form of the flip phones. The district court also informed the jurors a defendant acts "knowingly" when they are "aware of the nature of [their] conduct that the State complains about." Those definitions substantively conform to the culpable mental states described in K.S.A. 21-5202. See PIK Crim. 4th 52.010.

And the district court defined "recklessly" in the jury instructions as applicable "when the defendant consciously disregards a substantial and unjustifiable risk of the probable consequences of his act." The phrasing only loosely resembles the definition of "'recklessly'" in K.S.A. 21-5202(j) and PIK Crim. 4th 52.010. How the district court came up with its definition isn't obvious from the record; but the language bears a resemblance to the common-law meaning of "wantonness." See *Willard v. City of Kansas City*, 235 Kan. 655, Syl. ¶ 3, 681 P.2d 1067 (1984) ("To constitute wantonness the act must indicate . . . a reckless disregard or a complete indifference or an unconcern for the probable consequences of the wrongful act."); see also PIK Civ. 4th 103.03 ("Wanton conduct is doing something knowing that it is dangerous, and . . . recklessly disregarding the danger.").

All of that cuts against Phillips' cry of catastrophic error. Remember, Phillips did not share the cell where the corrections officers found the flip phones with anyone else. And he offered no explanation for the presence of the phones in his cell. Under those circumstances, we have little doubt the jurors readily could have (and would have) concluded Phillips "knowingly" or "intentionally" possessed the phones. The definitions of those terms more closely align with the factual circumstances than does "recklessly" as defined in the instructions. They are concerned with Phillips' deliberateness in having the flip phones in his cell in the first place. Conversely, recklessness, as set out in the jury

instructions, seems to point more toward Phillips' indifference to being punished for having them.

The facts, then, easily support a possessory crime consistent with Phillips knowing he had the flip phones in his cell. And logically he would have to know of the flip phones to substantially disregard some consequence for the act of possessing them. So, the way the jurors were instructed, they almost certainly would have had to find Phillips knowingly or intentionally kept the flip phone in his cell to even consider whether he acted recklessly in a manner consistent with the instructions by consciously disregarding a substantial risk of punishment (the probable consequence) for possessing the phones. Moreover, the instructions channeled the jurors toward that decision-making model by telling them, "If the State has proved that the defendant acted intentionally or knowingly, then the State has proved as well that the defendant acted recklessly." Given the language of the instructions, Phillips could not have shown they were clearly erroneous in outlining the culpable mental states in the sense that the verdicts likely would have been different had "recklessly" not been included and defined in the instructions.

We draw additional support for our assessment from *United States v. Marcus*, 560 U.S. 258, 130 S. Ct. 2159, 176 L. Ed. 2d 1012 (2010), in which the Court applied a plain error standard to an analogous instructional error. There, the government charged Glenn Marcus with violating the Trafficking Victims Protection Act (TVPA), 18 U.S.C. § 1589, that became effective in October 2000. During Marcus' trial, the government presented evidence of acts that occurred before the effective date and acts that occurred after. Because the earlier acts preceded the TVPA, they were not crimes. Neither side requested an instruction informing the jurors they could find Marcus guilty based only on his conduct after the effective date, and the district court did not give such an instruction. The jurors convicted Marcus.

13

On appellate review, Marcus argued for the first time that the conviction violated his constitutional rights because it could have been based on acts that weren't crimes when they occurred. He characterized the defect as a form of structural error. The Court rejected that characterization and treated the claim as an instructional mistake subject to review for "'plain error'" in the absence of a timely objection in the district court. *Marcus*, 560 U.S. at 265-66. The Court framed the issue this way: "The error . . . in this case created a risk that the jury would convict [Marcus] solely on the basis of conduct that was not criminal when [he] engaged in that conduct." 560 U.S. at 263. That matches Phillips' claim. And the federal plain-error standard equates to our clear-error review. 560 U.S. at 262 (error must be "'clear or obvious'" and have "'affected the outcome of the district court proceedings'") (quoting *Puckett v. United States*, 556 U.S. 129, 135, 129 S. Ct. 1423, 173 L. Ed. 2d 266 [2009]). The rationale in *Marcus* squares with our supposition that absent the invited-error barrier, Phillips' point about the appropriate culpable mental state would trigger review for clear error.

Phillips relies on *State v. Johnson*, 310 Kan. 835, 450 P.3d 790 (2019), to bolster his position, but the decision is inapposite. There a jury was instructed on the related crimes of intentional and reckless criminal threat, both felony violations of K.S.A. 21-5415(a)(1), and convicted Ryan Johnson in a general verdict that did not distinguish between the two. On appeal, Johnson argued that K.S.A. 21-5415(a)(1) was constitutionally overbroad because the reckless threat provision criminalized at least some speech protected under the First Amendment to the United States Constitution. The Kansas Supreme Court agreed and held that Johnson's conviction could not stand because he might have been convicted based on the unconstitutional portion of the statute. In short, the court recognized that due process protections preclude convicting a person under a constitutionally infirm statute, and there was a real possibility Johnson had been so convicted. 310 Kan. at 842-43. The court more fully outlined the statute's constitutional defect in *State v. Boettger*, 310 Kan. 800, 450 P.3d 805 (2019), decided the same day as *Johnson*.

14

Phillips says his circumstance is analogous and requires a like result—his convictions should be reversed. The analogy, however, doesn't ring true legally. In *Johnson*, the statute itself was constitutionally flawed, and that flaw prompted the error. Here, the statute criminalizing trafficking in contraband is constitutionally acceptable, and Phillips injected the claimed error when he requested the jury be instructed on recklessness as a culpable mental state. So the problem he complains about was of his own making. And his situation is comparable to *Marcus*, as we have explained. In the interest of completeness, though as a legal aside to Phillips' argument, we mention that the substantive holdings in *Johnson* and *Boettger* have been called into question in light of *Counterman v. Colorado*, 600 U.S. 66, 143 S. Ct. 2106, 216 L. Ed. 2d 775 (2023). See *State v. Phipps*, 63 Kan. App. 2d 698, Syl. ¶ 1, 539 P.3d 227 (2023), *rev. granted* 318 Kan. 1089 (2024).

To sum up, Phillips' argument that the jurors may have convicted him of reckless possession of the flip phones rests on an invited instructional error, and he cannot prevail for that reason alone.

*Failure to Instruct Jury on Definition of Possession*

Phillips argues the district court erred in failing to instruct the jury on the definition of "possession" as an element of trafficking in contraband. As we have said, "'possession'" is a defined term in the criminal code under K.S.A. 2016 Supp. 21-5111(v), and PIK Crim. 4th 57.040 (2022 Supp.) provides corresponding language as part of the elements instruction for possession of a controlled substance as does PIK Crim. 4th 63.040 (2022 Supp.) for criminal possession of a weapon by a felon. But PIK Crim. 4th 59.110 covering trafficking in contraband does not, even though one of the ways of committing the crime is unauthorized possession. And the notes for using PIK Crim. 4th 59.110 do not mention the statutory definition of possession.

An instruction defining possession would have been legally and factually appropriate and should have been given. The district court erred in not doing so. But because Phillips did not object in the district court, we review for clear error. The instruction would have assisted the jurors in that the definition would have been pertinent. And the instruction might have further guided the jurors away from looking at recklessness as a culpable mental state. We fail to see how the instruction would have led to a different outcome for Phillips. Nothing in the statutory definition of possession or the parallel PIK language would have supported not guilty verdicts.

*Failure to Instruct on Notice*

The statute criminalizing the possession of contraband does not endeavor to list or define what is proscribed and principally refers generically to an "item" that is either "unauthorized" or introduced into a correctional facility "without the consent of the administrator." K.S.A. 21-5914(a). In considering comparable language in the predecessor statute to K.S.A. 21-5914, the Kansas Supreme Court held the Legislature had properly delegated to administrators the task of identifying contraband for their respective facilities and duly notifying employees, confined individuals, and visitors of those restrictions. *State v. Watson*, 273 Kan. 426, 435, 44 P.3d 357 (2002). The rule in *Watson* applies to the current statute. *State v. Taylor*, 54 Kan. App. 2d 394, Syl. ¶¶ 5-6, 401 P.3d 632 (2017). Due notice of what "items" amount to contraband becomes an element of the crime the State must prove to the jury beyond a reasonable doubt. 54 Kan. App. 2d at 431; see PIK Crim. 4th 59.110 (outlining notice as element); cf. *State v. Hinostroza*, 319 Kan. ___, 2024 WL 3627659, at *10 (2024) (assuming notice to be element rather than affirmative defense rooted in due process). The State, therefore, must prove beyond a reasonable doubt that a defendant had received fair notice that the item in their possession was considered contraband in that correctional facility.

16

Phillips contends the district court erred by failing to include due notice in the elements instructions given to the jurors. He is correct about the error. But he invited the error.

Phillips' requested jury instructions did not refer to notice, let alone set it out as an element to be proved. The requested elements instruction did require the jury to find Phillips' possession of the flip phones to be "unauthorized" and to find he "acted without the consent of the administrator of the correctional facility." Those are at least allied concepts revolving around the idea Phillips lacked approval for the flip phones, and they are drawn from the language of K.S.A. 21-5914(a). The elements instruction the district court gave the jury on each count matched Phillips' requested instruction in those respects. And Phillips did not object to the instruction. We, therefore, have another invited instructional error. Because Phillips invited the error in the district court, we decline to consider relief for him on appeal.

*Prosecutorial Error in Closing Argument*

Phillips contends the prosecutor's closing argument to the jury contained several improper statements that compromised his right to a fair trial and now require reversal of the convictions. We briefly outline the legal principles governing prosecutorial error and then apply them to Phillips' claims.

Although lawyers have considerable latitude in arguing their clients' cause to jurors at the end of a trial, they may not misrepresent the law or the evidence. A prosecutor commits error by doing so. See *State v. Davis*, 306 Kan. 400, 413-14, 394 P.3d 817 (2017) (prosecutorial error to misstate either law or evidence in closing argument). Appellate courts examine that sort of prosecutorial miscue using the analytical model first outlined in *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016). See *State v. Anderson*, 318 Kan. 425, 437, 543 P.3d 1120 (2024) (recognizing and applying

*Sherman* test). The *Sherman* test considers whether an error has occurred and then weighs any prejudice to the defendant resulting from the error. Prejudice should be measured against the standard in *Ward*, 292 Kan. 541, Syl. ¶ 6, for a constitutional wrong. So the State, as the party benefiting from the error, must demonstrate "'beyond a reasonable doubt'" that the mistake "'did not affect the outcome of the trial'" taking account of the full trial record. *Sherman*, 305 Kan. at 109 (quoting *Ward*, 292 Kan. 541, Syl. ¶ 6). That is, the appellate court must determine if the error deprived the defendant of a fair trial—a constitutional protection rooted both in due process and in the right to trial itself. *Sherman*, 305 Kan. at 98-99, 109.

For his first claim of prosecutorial error, Phillips contends the prosecutor improperly argued that the jurors could convict him based on reckless possession of the flip phones. As we have already explained, reckless possession of contraband is not a crime because the element of possession requires a knowing or intentional mental state. So the prosecutor erred by misstating the law, albeit in a way that matched what was in the jury instructions. And that presents an intriguing question about how we should review the error. The prosecutor's argument was directly derivative of Phillips' invited error in asking for a jury instruction that included recklessness. We suppose a less stringent standard might be applicable in this situation. But we put aside the supposition and use the constitutional error standard since it is more favorable to Phillips, thereby sidestepping an unnecessary controversy.

The State's closing argument to the jurors was quite short and rather conclusory. Basically, the prosecutor told the jurors: You heard the evidence; Phillips had the flip phones in his one-person cell when the correctional officers searched it; so you should find him guilty. The prosecutor referred to the three mental states in the jury instructions—intentionally, knowingly, and recklessly—more or less in passing and said any of them would be sufficient to convict Phillips. The prosecutor did not dwell on or endeavor to explain any of them beyond the language in the jury instructions. Phillips'

lawyer mostly criticized the State for not having introduced the flip phones themselves as evidence during the trial and suggested relying simply on photographs of them was both legally insufficient to convict and patently unfair. And he suggested that simply because Phillips had telephone numbers written on a piece of paper in no way proved the crimes.

Given the overwhelming evidence Phillips kept the flip phones in a one-person cell assigned to him and the prosecutor's abbreviated reference to all of the culpable mental states identified in the jury instructions, we are persuaded beyond a reasonable doubt the outcome of the trial would have been the same had the prosecutor said nothing about recklessness. That snippet of the closing argument would not have been the deciding factor in the jurors' decision to convict. The evidence rather plainly showed Phillips knowingly or intentionally had the flip phones in his possession when they were seized as contraband.

Phillips next argues the prosecutor erred in telling the jurors "not to focus" on testimony that guards sometimes brought wireless phones into the prison for inmates and instead to concentrate on the evidence bearing on the flip phones found in Phillips' cell. We fail to see this sort of suggestion or direction to the jurors to be error. Good advocates presumably will guide jurors toward evidence favoring their clients while defusing and downplaying the unfavorable. That sort of guidance is the stuff of closing argument. And it neither misstates the law nor mischaracterizes the evidence—improper argument that would be error.

Finally, Phillips contends the prosecutor erred in telling the jurors not to "shift the burden" to the State to prove or negate irrelevant factual propositions the defense raised and to look at the evidence about the flip phones. According to Phillips, the prosecutor's argument improperly implied the defense had the burden to prove something to secure a not guilty verdict. But Phillips takes the prosecutor's words about shifting the burden out of context to fashion his contention. See *State v. Naputi*, 293 Kan. 55, 59, 260 P.3d 86

19

(2011) (prosecutor's challenged remarks in closing argument must be viewed "in their full context").

Here, in the rebuttal argument, the prosecutor told the jurors:

"What the defense kept trying to do is shift the burden, that all these things need to be done to be able for you to find beyond reasonable doubt. That's not what you're supposed to do. You don't shift the burden. You rely on what evidence is and is not presented. And the evidence that is presented is from two officers, who, by the way, they don't have any axe to grind, any issues with Mr. Phillips. They don't. They're just doing their job. They're off—they don't even work for Lansing anymore. They're here just telling what they remembered from that date and time when they got those phones. They're not sitting in here telling you about why or how those so da—dangerous cell phones either. They're here, independent of LCF, telling you what transpired."

And he then told them:

"And so there's absolutely no reason—so don't get shift burden of what was— what was brought up by the defense. Focus on what the evidence was. That's your job. Put those evidence, the elements, and apply it to the law. The dates aren't argued; that it's in Leavenworth County isn't argued; that it's contraband isn't argued; that he's an inmate there is—isn't argued. And the argument is whether the cell phones existed isn't an argument."

The argument largely repeated and elaborated on the prosecutor's entirely proper comment about what to focus on in the evidence. The prosecutor essentially told the jurors the State has the burden to prove the elements outlined in the two jury instructions on the charged offenses of trafficking in contraband and that the burden does not "shift" to require the State to overcome the defense's otherwise extraneous factual representations. Those presumably would include some obligation on the State's part to produce the flip phones themselves as evidence to convict or to negate or otherwise

20

respond to the suggestion that guards sometimes smuggled wireless phones into the prison for inmates.

The prosecutor's argument, though less than elegantly made, was permissible. A prosecutor may properly tell the jurors the State's burden to convict lies in proving the elements of the charged crimes beyond a reasonable doubt and in negating any affirmative defenses (of which there were none in this case). In turn, a prosecutor may explain that the required burden does not shift to or cover other facts that may be disputed in the evidence but are tangential to the elements and any affirmative defenses.

But using wording like "shifting the burden" or "burden shifting" to explain the idea seems infelicitous. Although those phrases may not be terms of art within the law, they do convey in a shorthand way to lawyers and judges that the obligation to satisfy a degree of proof has migrated from one party to an opposing party for some reason. In other words, the "burden" of production or persuasion has "shifted." See *Hill v. State*, 310 Kan. 490, 516-19, 448 P.3d 457 (2019) (discussing burden-shifting framework for circumstantially proving unlawful intent in employment discrimination action); *Cresto v. Cresto*, 302 Kan. 820, Syl. ¶ 6, 358 P.3d 831 (2015) (evidence of suspicious circumstances shifts burden of proof to proponent of testamentary instrument to rebut presumption of undue influence).

In a criminal case, of course, the burden never shifts to a defendant to prove their innocence. That said, we conclude the prosecutor's phrasing here did not mislead the jurors about what the State had to prove to convict Phillips or convey that Phillips had the burden to prove something to be found not guilty. The comments may not have exemplified sterling phrasemaking. In context, however, they did not amount to prosecutorial error.

*Cumulative Error*

For his final point, Phillips argues that the cumulative effect of the errors in the district court deprived him of a fair trial. Appellate courts will weigh the collective impact of trial errors and may grant relief if that aggregated impact has deprived the defendant of a fair hearing even when the errors considered individually would not necessarily have required reversal of a conviction. *State v. Harris*, 310 Kan. 1026, 1041, 453 P.3d 1172 (2019); *State v. Smith-Parker*, 301 Kan. 132, 167-68, 340 P.3d 485 (2014). An appellate court examines the entire trial record to assess the effect of multiple trial errors. 301 Kan. at 167-68. The assessment takes account of "how the trial judge dealt with the errors as they arose; the nature and number of errors and their interrelationship, if any; and the overall strength of the evidence." *State v. Miller*, 308 Kan. 1119, 1176, 427 P.3d 907 (2018). When the heightened review for constitutional error applies to at least one of the deficiencies—as it does here—that standard governs the cumulative error analysis. *State v. Thomas*, 311 Kan. 905, 914, 468 P.3d 323 (2020). So we have to be convinced beyond a reasonable doubt the jurors would have come to the same result without the properly considered errors.

This court has consistently recognized that invited trial errors cannot be resuscitated and considered as part of a claim for cumulative error. See *Dean v. State*, No. 124,885, 2023 WL 3404943, at *6 (Kan. App. 2023) (unpublished opinion); *State v. Shears*, No. 121,303, 2021 WL 4703254, at *4 (Kan. App. 2021) (unpublished opinion); *State v. Knight*, No. 105,092, 2012 WL 2325849, at *7 (Kan. App. 2012) (unpublished opinion). Similarly, the Kansas Supreme Court recently held that a jury instruction issue raised for the first time on appeal may be considered in a cumulative error analysis only if the mistake amounts to clear error. *State v. Waldschmidt*, 318 Kan. 633, 662, 546 P.3d 716 (2024).

Given those limitations, we have identified four pertinent errors in the prosecution of Phillips:

• The stipulation to Phillips' status as an inmate without securing a jury trial waiver from him. This is a constitutional error. But it could not have had any meaningful impact on the jurors' consideration of the evidence. There could be no serious claim Phillips was not an inmate—the stipulated fact. After all, the undisputed evidence showed he lived in a cell in the prison. Despite being a constitutional error, the omitted waiver could not have contributed in any meaningful way to a cumulative error requiring reversal of the convictions. Had Phillips personally declined to waive his right to have a jury consider his status as an inmate, the State easily could have proved (and really did prove) the fact during trial.

• The inclusion of "recklessly" as a culpable state of mind in the complaint charging Phillips. We consider this a nonconstitutional error because the complaint otherwise properly charged Phillips with trafficking contraband in a correctional institution, so the term could be excised as surplusage. Moreover, the error would not be properly considered in a cumulative error analysis because the jurors were unaware of it, and it would not have influenced their verdicts. In that sense, the mistake in the complaint was also superseded by Phillips' invited error requesting that recklessly be included in the jury instructions. And we do not consider that invited error.

• The failure to instruct the jury on the statutory definition of "possession." An instruction on the definition would have been appropriate, and the district court should have given one. But Phillips did not request the instruction, so we reviewed this point for clear error and found none. If we had, we would have reversed his convictions for that reason alone. See *Waldschmidt*, 318 Kan. at 646 (to establish clear instructional error, appellate court must be "firmly convinced" the jury would have reached different verdict

23

absent error); *State v. Dobbs*, 297 Kan. 1225, Syl. ¶ 5, 308 P.3d 1258 (2013). Consistent with *Waldschmidt*, we do not weigh the omission in assessing cumulative trial error.

• The prosecutor's reference in closing argument to "recklessly" as an appropriate culpable mental state. We found this to be prosecutorial error since possession of contraband cannot be premised on a reckless state of mind. And it is a constitutional misstep. But, as we have explained, the prosecutor simply commented without any material discussion that any of the three mental states identified in the instructions would be sufficient to convict. We are convinced the fleeting reference was constitutionally harmless, especially given the plain evidence Phillips knew perfectly well he had a flip phone in his cell each time the corrections officers searched.

Given the record, each of these errors could fairly be characterized as picayune. And while that's not a legal term, it is descriptive of the exceptionally limited impact they had singly and collectively on the trial. None of them presented anything even approaching a borderline call on reversible error, and they did not materially aggravate each other to create an overall impact that deprived Phillips of a fundamentally fair trial. But that analysis is overly generous to Phillips because we really should consider only the stipulation that he was an inmate and the prosecutor's abbreviated reference in his closing argument to recklessly as a culpable mental state. We have no difficulty finding beyond a reasonable doubt the claim of cumulative error fails.

Affirmed.

24